**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        **v.**                              **07-CR-0192A(Sr)**

**RHAMELLE LAMONT JACKSON,**

        **Defendant.**

_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

## PRELIMINARY STATEMENT

The defendant, Rhamelle Lamont Jackson ("the defendant"), is charged in an Indictment with having violated Title 18 U.S.C. §§ 922(k) and 924(a)(1)( B) (Count 1) and also faces a forfeiture count (Count 2) pursuant to 18 U.S.C. §§ 924(d) and 3665. (Docket #1).  He has filed a motion wherein he seeks "to suppress all evidence, given that the stop and arrest of [the defendant] on [June 27, 2006] was without reasonable suspicion that he had committed any crime, and there was no probable cause for his arrest."  (Docket #7, p. 4).  He also filed a "protective motion to suppress any statements that he may have made by claiming "that any statements that were made"

by him "were made without issuance of *Miranda* warnings and/or were involuntary." (Docket #7, p. 4).

The government has stated that it "does not intend to offer into evidence at its case-in-chief at a trial of this indictment any statements made by the defendant." (Docket #9, p. 3). As a result, it is hereby recommended that defendant's "protective motion" to suppress any statements made by him be DENIED on the basis that it is moot. Therefore, only defendant's motion to suppress any tangible evidence intended to be used by the government at the trial of this case will be specifically analyzed and discussed herein.

## FACTS[1]

On June 27, 2006 at approximately 10:55 p.m. in the City of Niagara Falls, New York, officers from the City of Niagara Falls Police Department observed a group of individuals, including the defendant, "shooting or rolling dice" at or near the corner of 18th Street and Niagara Avenue in Niagara Falls, New York. The officers exited their patrol car, and as they approached the individuals, said individuals, including the defendant, began running away from the scene. The defendant was observed running up a driveway toward a van parked there. One of the officers gave chase toward the

---

[1] At the time of oral argument of defendant's motions on October 30, 2007, counsel for the defendant stated that there was agreement between the defendant and the government that the weapon in question forming the basis for the charge in Count 1 was not taken from the defendant's person on June 27, 2006. The facts, as stated herein, are taken from the government's "Response To The Defendant's Motion." Docket #9, pp. 1-2).

defendant.  Apparently the defendant was prevented from running any further by a chain link fence, and as the pursuing officer was closing in on the defendant, the officer "heard the fence rattle and then heard a 'thud' of some object striking the ground." Thereupon, the defendant walked out from the driveway and was detained by the officer while a fellow officer checked "the area from which the defendant had just come."  This officer "observed the firearm that is the subject of this indictment laying on top of the grass on the other side of the chainlink fence."  The defendant was arrested and charged with Criminal Possession of a Weapon in the Second Degree in violation of § 265.02-3 of the New York Penal Law.  Docket #9, pp. 1-2.

## DISCUSSION AND ANALYSIS

The defendant cites *Terry v. Ohio*, 392 U.S. 1 (1968) in support of his contention that the police officers did not have "reasonable suspicion" to suspect that the defendant was engaged in any criminal activity and therefore, the action of the police officers in detaining him on June 27, 2006 constituted an illegal arrest because there was "no probable cause for his arrest."  (Docket #7, p. 4).

In opposition to the defendant's claim, the government argues that "there was no search of the defendant, illegal or otherwise, such as to form a sufficient basis for a motion to suppress;" or "in the alternative, that the firearm was discovered after it had been abandoned by the defendant."  (Docket #9, p. 3).

The facts of this case as set forth above do not support the claim of the defendant that he was unlawfully seized on June 27, 2006 and therefore, for the reasons hereinafter stated, his motion to suppress the evidence seized is without merit.

The police officers observed what appeared to be a dice game being conducted by five or six individuals, including the defendant, at or near the public corner of 18th Street and Niagara Avenue in Niagara Falls, New York on June 27, 2006. Section 240.35-2 of the New York Penal Law provides as follows:

> A person is guilty of loitering when he:
>
> 2. Loiters or remains in a public place for the purpose of gambling with cards, dice or other gambling paraphernalia;
>
> * * *
>
> Loitering is a violation.

The fact that the "violation" in this case may have been minor in nature is of no legal consequence for "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (police officer authorized to arrest driver where neither she nor her children were wearing seat belts); *see Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001) (police officer authorized to arrest driver for speeding); *New York v. Class*, 475 U.S. 106, 118 (1986) (formal arrest permissible for a traffic offense under New York

law); *United States v. Scopo*, 19 F.3d 777, 781-782 (2d Cir.) (probable cause to stop and arrest driver where police officers observed driver's failure to signal while changing lanes), *cert. denied,* 513 U.S. 877 (1994).

Since the officers observed what appeared to be criminal activity afoot, they had a right to investigate the matter further by approaching the individuals involved. *Terry v. Ohio*, 392 U.S. 1, (1968). I do not believe that the mere act of the officers in approaching the individuals, including the defendant, constituted a "show of authority" but even if it did, such act was of no legal consequence to the rights of the defendant. As the United States Supreme Court has stated:

> The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. **We hold that it does not.**

*California v. Hodari D*, 499 U.S. 621, 626 (1991) (emphasis added).

Since the defendant was not seized at this stage, he has no valid claim of a Fourth Amendment violation. There was no arrest and there was no detention of the defendant.

The defendant argues, however, that the police officers lacked "reasonable suspicion that he had committed any crime." (Docket #7, p. 4). Even assuming *arguendo* that "reasonable suspicion" was lacking as to the defendant when the officers first observed the group of individuals engaged in a dice game, the

defendant's very own act of fleeing vitiates his argument.  Unprovoked flight upon noticing police is pertinent in determining reasonable suspicion.  *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975).

> Headlong flight - whenever it occurs - is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such . . . . [T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.
>
> \* \* \*
>
> Flight, by its very nature, is 'not going about one's business'; in fact, it is just the opposite.  Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000).

Once the defendant began running away, the officers had a legal right to pursue him for the purpose of "investigating further."  The fact that the officers were pursuing him, and perhaps ordering him to halt, did not cause the defendant to be seized.  "A seizure is a single act and not a continuous fact."  *Thompson v. Whitman*, 18 Wall 457, 471, 21 L.Ed. 897 (1874) (quoted with approval in *California v. Hodari D*, 499 U.S. at 625.

The rationale of the United States Supreme Court's decision in *Hodari D.* applies on all fours to the facts of the case at bar wherein the court ruled:

> In sum, assuming that Pertoso's pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied.

*Hodari D.,* 499 U.S. at 629.

It was after the defendant allegedly discarded the weapon in question by throwing it over the chain link fence that he was seized and detained as part of the officers' investigation of possible criminal activity occurring. Once the weapon was found in the area that the pursuing officer heard the "thud" while chasing the defendant, the officers had probable cause to arrest the defendant.

As to the recovery of the weapon, the defendant has no standing to challenge that recovery as a violation of his Fourth Amendment rights. "There can be nothing unlawful in the government's appropriation of . . . abandoned property." *Albel v. United States*, 362 U.S. 217, 241 (1960). "It is well settled that if a defendant abandons property while he is being pursued by police officers, he forfeits any reasonable expectation of privacy he may have had in that property." *United States v. Soto-Beniquez,* 356 F.3d 1, 36 (1st Cir. 2003). As the United States Supreme Court has ruled:

> [T]he special protection accorded by the Fourth Amendment to the people in their "persons, houses, papers and effects" is not extended to the open fields.

*Hester v. United States*, 265 U.S. 57, 59 (1924).

In conclusion, the weapon allegedly "abandoned while [the defendant] was running was not the fruit of a seizure." *California v. Hodari D, supra* at 629. Therefore, it is RECOMMENDED that defendant's motion to suppress the evidence be in all respects DENIED.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140

(1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

S/ H. Kenneth Schroeder, Jr.
H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

DATED:	Buffalo, New York
	February 5, 2008